Ronald Wilcox #176601
2160 The Alameda, First Floor, Suite F
San Jose, CA 95126
Tel: (408) 296-0400
Fax: (408) 296-0486

Lance Raphael
Allison Krumhorn
Consumer Advocacy Center, P.C.
180 West Washington, Suite 700
Chicago, IL 60602
Tel: (312) 782-5808
Fax: (312) 377-9930
(Not admitted to practice in California)

Brian L. Bromberg
Brian L. Bromberg, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
Tel: (212) 248-7906
Fax: (212) 248-7908
(Admitted pro hac vice)

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| Elizabeth Trevino and Yadira Rios, on behalf of Themselves and all others similarly situated, | ) Case No. 05-cv-239-JF- HRL ) |
| Plaintiffs, | ) Plaintiffs' Reply ) Memorandum in Support of Motion ) to Compel Written Discovery from |
| v. | ) ACB American, Inc. ) |
| ACB American, Inc., Hilco Receivables, LLC, B. Masters and K. Francis, | ) Hon. Howard R. Lloyd ) 280 South 1st St ) San Jose, CA 95113 |
| Defendants. | ) Date: January 24, 2006 ) Time: 10:00 a.m. |

A.   **Introduction**

In the interests of not repeating every point made in the initial motion papers, Plaintiffs are going to discuss only the major claims raised and cases discussed for the first time in Defendants' opposition papers.

Plaintiff's counsel would like to set the record straight on the history of this case. Before June Koper became involved, an associate by the name of Jeanine Clasen was representing the Defendants. She was let go by the firm for, among other missteps, failing to attend a Case Management Conference in this case. Obviously, behavior of this sort has only served to delay matters.

Since Defendants' counsel let Ms. Clasen go, Plaintiff has made repeated attempts to keep fees down by resolving the case through a class-wide settlement. At first Ms. Koper expressed some interest in such a settlement but nothing came of the discussions.

Thereafter, the parties attempted to informally resolve the discovery disputes. Belatedly, Defendants produced some discovery. After many hours on the telephone and the preparation and service of two motions to compel, on January 10, 2006, one day before responding papers were due, my office received "Supplemental Response[s] to Plaintiffs' Request for Production of Documents, Set One." In other words, Plaintiffs' attempts to settle this case and to informally reach some kind of agreement concerning discovery have come to naught.

B.   **Discovery of other litigation and complaints against Defendants (Interrogatory Nos. 4 and 9, and RPD Nos. 2, 3, 4, 23, 24 and 25)**

Plaintiffs brought this case as a class action. Accordingly, Plaintiffs are entitled to class discovery. Plaintiffs have an obligation to conduct due diligence to determine the merits of the various claims and to establish class damages. While it is true that courts will sometimes

bifurcate discovery, practices vary from jurisdiction to jurisdiction and the burden is on Defendants to move for bifurcation.

Secondly, there is a countervailing trend shown by the 2003 amendments to Federal Rule of Civil Procedure 23. By changing the time for certification under Rule 23 to provide for class certification "at an early practicable time" instead of "as soon as practicable," the United States Judicial Conference signaled a preference for allowing substantive and damages issues to be explored before class certification. In other words, the Judicial Conference indicated a desire to avoid premature motions for class certification. Here, by proceeding with class damages discovery now, Plaintiffs are merely carrying out the Judicial Conference's goals.

Thirdly, Defendants appear to have intentionally misrepresented the holdings of the three cases upon which they rely: *Cusumano v. NRB, Inc.*, 1998 WL 673833 (N.D.Ill. 1998); *Byes v. Credit Bureau Enterprises, Inc.*, 1995 WL 540235 (E.D. La. 1995); *Powell v. Computer Credit, Inc.*, 975 F.Supp. 1034 (S.D.Ohio 1997); and 927 F.Supp. 1172 (W.D. Wisc. 1996). In these cases, the courts compared the factors to be used in determining statutory damages under the FDCPA for individual as opposed to class cases and determined that unlawful collection activities against other consumers is not relevant to determining statutory damages in an *individual* case. That is, the courts held that in deciding whether an individual plaintiff suing on his or her own behalf is entitled to $100.00, $500.00, or the maximum individual recovery of $1,000.00, the only relevant inquiry is the nature, extent, frequency, and persistence of violations concerning the individual plaintiff. The courts reached this conclusion by noting that the FDCPA's class action statutory damages provision – § 1692k(b)(2) – expressly provides that the court should take into account "the number of persons adversely affected" whereas the individual statutory damages provision – § 1692k(b)(1) – does not.

But this is not the end of the matter. It is respectfully submitted that the courts in the cases defendants cite erred in holding that evidence of similar FDCPA violations against other individuals cannot be introduced in an individual case. For example, evidence of other violations is necessary to meet a "bona fide error" claim under FDCPA § 1692k(c), which requires a showing by a defendant of "the maintenance of procedures reasonably adapted to avoid any such error." In addition, the language difference between the individual and class FDCPA statutory damages provisions has a much more prosaic explanation: when deciding on statutory damages for a class, courts should take into account the number of class members. In other words, there's a big difference between violating the rights of 40 consumers – the number of consumers at which a presumption of numerosity arises in most jurisdictions – and violating the rights of 40,000 consumers. Thus, even in an individual case, courts should take into account the nature, extent, frequency, and persistence of FDCPA violations against other consumers in setting individual statutory damages.

  **C.**  **The steps in the collection process (Interrogatory No. 8)**

Interrogatory No. 8 is a common inquiry concerning who did what with Plaintiffs' accounts leading up to the mailing of the collection letters. The question is not complicated and the response should not be complicated. By obtaining this information through an interrogatory, Plaintiffs wish to avoid having to call numerous Rule 30(b)(6) witnesses to break down exactly who did what to whom. In the interests of judicial economy, courts routinely require this question to be answered.

  D.  **Net worth is relevant**

Defendants claim that they have not waived objections to net worth discovery but in the year this case has been pending and the three weeks this motion to compel has been pending,

they have not moved to bifurcate discovery. The question of Defendants' net worth is relevant not only to establishing the one-percent-of-net-worth cap on damages under FDCPA § 1692k but to determining the actual amount of damages under the FDCPA's class action statutory damages provision – § 1692k(b)(2) – which requires that the court take into account "the resources of the debt collector…." The class may also be entitled to one percent of net worth under Civil Code 1788.17.

Secondly, Defendants' counsel is certainly planning on claiming – as they do in every case – that a class should not be certified because the per-person statutory damages recovery will probably be far less than any potential individual recovery. Plaintiffs must have net worth and class size information to address this spurious claim.

Finally, Plaintiffs must have net worth information to adequately assess any settlement offer Defendants make or to propound a settlement demand.

E. **Information concerning practices outside of California (Interrogatory Nos. 11, 12, 13, 15, and 20)**

Plaintiffs are investigating Defendants practices throughout the country and may amend the class definition up until the time of certification. With respect to Interrogatory No. 20, requesting the number of class members sued on debts under $500.00, this is a key area of inquiry. Perhaps Defendants sue on debts over $1,000.00. Perhaps Defendants sue on debts over $2,000.00. But whatever their practice, it is highly unlikely that Defendants sue on debts under $500.00. Thus, Defendants' ACB's pattern and practice goes to intent. If ACB does not sue anywhere for less than $500.00, then ACB intended to violate the FDCPA.

F. **More detailed responses to Requests for Admission Nos. 51 and 67 are required**

In cases past, debt collectors or their attorneys have represented one number for class size and then the number of class members suddenly multiplies, sometimes astronomically, between

the time a class is certified and the time when notice is being sent out. Plaintiffs' counsel must know how many class members are going to be in the certified class. The number should be provided now and not at some undisclosed future date. Failure to provide this information now could potentially lead to unnecessary motion practice before the Court.

 G. **Operations Manuals (RPD Nos. 10, 20, and 21)**

Defendant ACB collects consumer debts on behalf of third parties. Debt collectors use operations/training manuals to govern these collection activities. These manuals set forth the procedures the debt collection agencies use to collect from consumers. Such documents are not privileged and courts routinely direct that copies be turned over.

 H. **Documents Defendants consulted in responding to interrogatories (RPD No. 18)**

This request is the equivalent of asking "What did you look at preparing for this deposition." Because Defendants would presumably not object to this question at a deposition, it is difficult to see how they are objecting to the question here. Presumably, Defendants drew their responses from non-privileged collection records.

 I. **Defendants' claims of privilege**

Defendants have the burden for withholding documents on the basis of privilege. ACB asserts repeatedly that Plaintiffs or their counsel are asking for privileged information but Defendants have no basis for making this claim. Defendants' counsel has repeatedly litigated against Plaintiffs' counsel, and knows that Plaintiffs' counsel is actively involved in many consumer groups and has no intention of going into competition with Defendants. At best, Plaintiffs' counsel makes an argument for adopting a standard Northern District of California confidentiality order. At worst, and this is Plaintiffs' position, Defendants have waived their objections by not providing a privilege log.

J. **Defendants' redactions**

Defendant ACB repeatedly claims that it is not hiding anything but there appear to be numerous items that have either been deleted from ACB's computer system or redacted. For instance, Plaintiffs can find no record of a first letter – containing an FDCPA-mandated validation notice – having been sent to Trevino, and Plaintiffs can find no record of any letters having been sent to Rios. Plaintiffs intend to address this matter more fully at the hearing.

Dated: New York, New York
January 10, 2006

                                            Respectfully submitted,
                                            Brian L. Bromberg, P.C.


                                            /s/ Brian L. Bromberg
                                            Brian L. Bromberg (admitted pro hac vice)
                                            One of Plaintiffs' Attorneys